Good morning, Your Honor. May it please the Court. Samuel Goldstein for the Petitioner, Ms. Jimenez. I'd like to reserve two minutes for rebuttal. All right. Thanks. The Board and the IJ erred in at least three respects, each of which independently requires this Court to vacate and remand for new proceedings. First, as to cancellation of removal, the Board applied an erroneous legal standard of truly compelling, countervailing equities, nearly identical to a standard that both the Board and this Court have rejected. Second, as to withholding of removal and CAT, the Board lacked substantial evidence on which to find that Ms. Jimenez failed to show a likelihood of persecution in Mexico based on her sexual orientation and her marriage. And third, as to due process, the IJ failed to afford Ms. Jimenez her right to a full and fair trial before a neutral, unbiased adjudicator. So if I could start with cancellation of removal. So the Board applied an improper heightened legal standard when it required Ms. Jimenez to show truly compelling, countervailing equities based on the fact that her record contained DUI convictions. Well, okay. I understand. Maybe you can parse the words a bit. Yeah. But if I look at what the BIA did, it seemed that they found Ms. Jimenez and her wife to be credible, right? Right. So all of that was being considered. And then the BIA noted Ms. Jimenez's three DUI convictions, describing them as extremely dangerous crimes, and also talked about, I know you've tried to address your alcoholism, but you haven't been successful. You keep getting DUIs. And, you know, that I'm considering all of the evidence, and it's a discretionary decision in saying, I'm basically don't think I'm going to, you know, I'm not going to let you stay and go out there and drink drunk driving. So how is that really? I don't really see how the BIA didn't look at everything and just basically said, hey, three DUIs is just too much, and that you're just not stopping. Well, in particular, the Board failed to consider the significant mitigating circumstances of two of the DUIs. So in one DUI, Ms. Jimenez's wife, Ms. Sloan, was supposed to be the designated driver, but then Ms. Sloan passed out because of her medical condition. And so Ms. Jimenez had to drive home and get her medication. So did the BIA hear that? Yeah, that was in our... But they just weighed it differently. Well, the BIA didn't mention... I mean, if they weigh it differently, and it's a discretionary decision, we're hands off. You lose. Well, the BIA didn't weigh it at all. I mean, nowhere in this discussion of cancellation does the BIA mention the mitigating circumstances of two of those DUIs, which are fairly significant. Some people would not consider those mitigating circumstances. There are taxis, there are things, there are other people who could drive. Those are excuses, but they're not necessarily mitigating circumstances. Right. Well, the Board erred here in not even mentioning them. And so Tello drew... In your view, counsel, what mitigating circumstances should have been mentioned by the Board? So those two, the fact that Ms. Jimenez was driving Ms. Sloan home to get medication, and the other DUI, Ms. Jimenez was with her abusive alcoholic uncle. But so the more general legal error is one that the Board addressed in Sotelo. So it drew a distinction between giving weight to circumstances and imposing a heightened legal requirement based on that circumstance in the abstract. So what the Board said in Sotelo was, in any balancing test, various factors, whether positive or negative, are accorded more weight than others according to the specific facts of the individual case. And it drew a distinction between that case-specific balancing and requiring the applicant to demonstrate outstanding equity just based on that negative circumstance in the abstract. So instead, the Board has to weigh the favorable and adverse factors in the totality of the evidence. And that's what the Board here failed to do. So if you look at bottom of AR-5, you know, it mentions DUIs and says they're very serious. But it short-circuited the analysis by, at that point, saying, just based on the presence of DUIs in her record, we're going to require Ms. Jimenez to show truly compelling countervailing equities. And she failed to do that. So that's the same legal error that this Court also recognized in Ancheta. So it said some cases may have to involve outstanding equities. And just based on recitation of that sentence alone, this Court vacated and remanded for the proceedings. And it's important to note here that if the Court thinks it's ambiguous, whether or not the Board was applying an incorrect legal standard or just, you know, weighing DUIs heavily, that requires this Court to vacate and remand for the Board to clarify its analysis. So we know that from this Court's opinion in Ancheta, where the IJ said, you know, some cases may have to involve unusual or outstanding equities, and the IJ appeared to have required Ancheta to make that heightened showing. You know, some cases may and appear to have required. It's not clear whether or not the IJ actually imposed that standard. But this Court still vacated and remanded for the Board to redo that analysis. And more generally, it's a fundamental principle of administrative law that this Court can only if the agency could have, you know, weighed the DUIs or it could have been applying an incorrect legal standard. This Court can't just affirm and say, you know, well, maybe it was just weighing the factor. The Court has to vacate and remand for the Board to clarify its analysis. But it's like— What evidence shows that Ms. Jimenez would likely face persecution or torture in Mexico as opposed to just discrimination? Yes, Your Honor. So, you know, many pieces of evidence in the record show that it goes beyond what the Board said was sometimes violence against gays and lesbians. So, for instance, the Human Rights Report at AR 738 says, you know, hate crimes on the basis of sexual orientation remain all too common. The Canada Immigration Board— Couldn't you say that about the United States, too? If there were evidence saying that, one could possibly say that. But we're just looking at the record here. And it's not just that one piece of evidence. I mean, you know, the Canada Immigration Board says, you know, there's reports of sexual abuse of LGBT people by police. They're routinely stopped and physically assaulted. The L.A. Times article says, you know, there's numerous reports of violence based on sexual orientation. And the 2016 State Department report, which was introduced at the Board, you know, mentioned a survey of gays and lesbians that said 60 percent of them reported knowing someone who had been murdered. So, you know, when the Board said there was sometimes violence against gays and lesbians, I think that misstates the record and is not supported by substantial evidence. And, importantly, you know, the record here is very similar to what this court encountered in Bromfield. So, in Bromfield, the country report noted that there was, you know, a culture of discrimination. But not just that. It also noted that there were And it described the problem as widespread. And the Board characterized that record as just random acts of violence. But this court said that was incorrect, not supported by substantial evidence. This court said those statements compelled a finding of a pattern or practice of persecution against gays and lesbians. And so, you know, the record is very similar there as it is here. So we think also the record here compels a finding of persecution against gays and lesbians. And, in particular, well, two more points, I guess. One is that this even goes beyond Bromfield. I mean, Ms. Jimenez is married. So she's more identifiable as a lesbian. And, you know, Ms. Sloan has significant physical disability. So, as Ms. Sloan testified, she's an easier target. And, second, you know, these predictions are not simply abstract. They have proven true. Ms. Jimenez and Ms. Sloan have, in fact, encountered anti-LGBT violence since Ms. Jimenez's removal. So we think that the record compels a finding of persecution. You've asked for sealing the record. Could we anonymize the names and assign anonymous names? Would that serve the same function? I think so, Your Honor. Okay. Thank you. Or we could omit the sensitive information. Yes. You could just describe it generally. So if you get a memorandum disposition that says describe mitigating circumstances, you'll know that we're talking about the sensitive information that you did not want revealed. I think that's correct, Your Honor. Yes. I just wanted to ask about the bias. Oh, yes, please. If there was any bias on the part of the immigration judge, why wasn't that cured by the decision or the ruling of the board? Well, as this Court made clear in Reyes-Melendez, you know, the board's de novo review cannot launder bias by the constitutional right to an unbiased adjudicator at every stage of the proceeding. So wasn't the bias that the information from the doctor wasn't considered? What's the exact nature of the bias? Is somebody standing in line and these people cut the line? Is that what you're assuming was the bias? Yes. Well, you know, he's indicating that he is disinclined against cancellation applicants, you know, more so than an IJ should be. So, you know, statements that, you know, cancellation applicants just want to wait in line, don't want to wait in line, and, you know, are taking opportunities that belong to others, I think indicates that he's not fairly applying the law to the facts of this case. But if the BIA does correctly apply the law, then how are you prejudiced by any—you're saying the structural error, so we don't look at prejudice. So what case—I thought we had cases that say that if the board applies the correct standard, then the bias argument is not viable. Oh, well, so, you know, if it's a legal question, like I think maybe you're referring to, I think, the Galey case, so where it's like if the IJ applied the wrong legal standard and the board applies the right one, that renders it harmless, but that doesn't apply to bias. Again, we're saying, you know, bias is a structural constitutional right, and you have a right to an unbiased adjudicator at every stage. And what case are you relying upon for the proposition that the statements that were made by the IJ, the immigration judge in this case, constituted bias? That's your strongest case that's close to the facts. I mean, probably Reyes-Melendez. I mean, you know, the cases we cite in our brief are sort of more about the particular facts of the cases, and here it's sort of more about cancellation applicants in general. But, you know, I think the statements in the record that cancellation... But it doesn't suggest that even if there were a legitimate case made for cancellation, that the immigration judge would ignore that evidence and deny cancellation in any of that. I don't think it has to rise to the level of ignoring the evidence. I mean, you know, in Reyes-Melendez, what this court said was the IJ's bias against people who have kids out of wedlock prevented him from fairly weighing the hardship to his children, and that's all that we have to show here. I think the IJ's bias prevented him from fairly applying the law to the facts and exercising his discretion, you know, against cancellation applicants. All right. Thank you, Kelsey. You've exceeded your time, but we'll give you a minute for rebuttal. Thanks very much. May it please the Court, I'm Rick Kelly, representing the Attorney General. Your Honor, this court lacks, generally, jurisdiction over discretionary denials of cancellation of removal, and in this case, I believe that the Board properly exercised its de novo authority to review the factors in the weighing of the equities and in the hardship analysis, and properly reversed the IJ's erroneous decision not to give weight to some of the petitioner's medical evidence. And in doing so, it also cured many of the evidentiary issues that the petitioner pointed out. Specifically, I would like to respond to some of the points made by the petitioner. First, the petitioner argues that Reyes-Melendez's case is applicable here. I would argue that that case is not, because in that case, the record was rife with bias by the IJ, who stood in moral judgment, co-opted 38 percent of the testimony, and used that kind of in his weighing of the factors. Whereas in here, first of all, I don't think there is sufficient evidence of bias. The part in the record where the petitioner points to is actually in the explanation of the law section of his opinion. So he's basically just trying to set the standard for what the petitioner has to meet in that case, which, in the Romero-Torres v. Ashcroft case, this court noted that Congress changed its definition from extreme hardship to exceptional and extremely unusual hardship. So I think all the IJ was trying to do was really just set the stage for that higher threshold that they would have to show in terms of the hardship setting. I don't think he meant to make any sort of moral judgment of the petitioner. And in any sense, the board effectively mooted that concern by de novo reviewing the hardship evidence that they put. What about opposing counsel's position that bias can't be cured? If it's structural, then the board cannot cure the immigration judge's bias by de novo review. What's your response? Well, I think it's correct in that if there is a structural kind of error, bias in the hearings, for example, if it kind of infected the whole proceedings, here there was no allegation by the petitioner that the actual proceedings were affected. They just kind of point out this one line in the IJ's decision, which I don't think is sufficient to show any sort of structural bias. In addition— So the IJ gave no weight to Dr. Wright's testimony, right? Correct. In light of the disciplinary action against him and found that no evidence had presented to show that Borrelia firm C is a recognized disease across the medical community, was that basically it? Yes, Your Honor. Was that error? Or was that corrected? Or what was— Yes, Your Honor, because the board recognized all of that evidence that she had presented. So, effectively, correct. It was cured. In addition, I think one of the major errors of the IJ was it actually ignored other corroborative evidence in the record that actually wasn't affiliated with Dr. Wright, which the board specifically noted in its opinion that it disagreed and it cited two other record evidence. Did the IJ think that Jimenez and Sloan were both credible? Yes, Your Honor. So, if you thought that there wasn't weight to— If the IJ gave no weight to Dr. Wright's testimony, the IJ still believed that Sloan had a whole bunch of medical problems, right? Correct, Your Honor. The IJ was kind of only aired in regards to the specific diagnosis of the other kind of medical evidence in the record, but he decided that the petitioner's wife would be able to receive treatment for those conditions in San Diego or if they lived in a border town in the United States across the border. Yes. Well, the BIA noted that Jimenez forfeited her right to relief absent proof of truly akin to those that the BIA has previously rejected. Yes, Your Honor. Well, in the cases petitioner cites, for example, matter of Sotelo-Sotelo, the board had specifically previously rejected a heightened standard of outstanded equities, but in that case, the IJ still used that specific standard. And also, in Artigo de Alvarez v. Holder, the BIA had previously rejected an unconscionability standard, which was noted by the court, and that was one of the reasons for rejecting that standard. However, in this case, if you look at the context, it's really just a concluding kind of in this section where it talks about those negative equities. So, in a sense, they were just kind of impressing upon the applicant that, look, these are really high equities. And the board, even in the next sentence, states again clearly the equities in this case, the negative equities simply outweigh the positive equities. Right, but you don't just use a phrase like truly compelling countervailing equities without seeing how close it is to outstanding equities, which has been said verboten. I mean, it was a mistake, wasn't it? Your Honor, it is unclear why the board chose to use those particular words. I mean, the board's decision did cite to matter Sotelo-Sotelo, so presumably they were aware of these kind of issues in these decisions. But again, I think it's just it's basically one of the concluding sentences. I think they were just kind of summing up why they rejected it based on discretion. The BIA also said she had not previously been persecuted or tortured in Mexico, but my understanding of the evidence is that she left when she was six. So, is that an erroneous conclusion? No, Your Honor. Generally, an analysis always starts with past persecution. Even in this Court's own cases, it noted its notes where, you know, if the person suffered past persecution, just because it's always a separate issue and it can lead to a rebuttal presumption of future persecution. So, I don't think there was any sort of, I think the important thing is there's no evidence the board or the IG did use that in its final determination of a clear probability of persecution. It's kind of like setting the summary judgment standard before you go into the analysis. Yes, Your Honor. And similarly with their claim of past torture, that's actually a factor under the regulations that should be considered. And I think just simply noting if the applicant suffered past torture is important to show that they did a thorough analysis. As long as they don't, there's no evidence that they solely relied on those and ignored other evidence. Also, Your Honors, I would just like to point out the Court's decision in Canales-Vargas v. Gonzalez, which I think is good because it shows how petitioners can prove the well-founded fear standard but still not meet the clear probability standard. And in that case, there were actual threats made to the petitioner and she still was not able to meet the clear probability standard. So, it is a very high standard and I think that was what the issue is here. So, if Your Honors have no further questions. It appears not. Thank you, counsel. Rebuttal. One minute. Thanks, Your Honor. Just one quick point, I guess. So, on cancellation, I mean, I don't understand the government dispute that if, in fact, the Board was applying an incorrect heightened legal standard of truly compelling kind of equities, that would be error that would require this Court to vacate and remand. And as we've discussed, you know, perhaps it is ambiguous whether the Court was applying that heightened standard and whether it properly took contextual account of all the that requires this Court to vacate and remand for the Board to make clear that it was applying the correct legal standard. And then just on the bias point, I mean, you know, again, structural error because it's impossible to tell whether or not the bias would have affected the outcome. So, we think we don't have to show prejudice. It was enough for the IJ to make these comments about skipping the line and those comments in and of itself violated her right to proceedings before an unbiased adjudicator. Counsel, what's your response to opposing counsel's observation that these comments were made in the context of setting the framework for the hearing as opposed to as part of the rendering of the decision? What's your response? Well, there's no case that they cite that, you know, comments indicating bias even in the statement of the applicable law aren't somehow erroneous. You know, if any statement where the factors in applying the law to the facts, that demonstrates bias that this Court has to correct by remanding. But he made reference to a case where the comments were permeated the proceedings and it took up quite a bit of the discussion of the decision in the case as opposed to here. Do you think that makes a difference? No, Your Honor, I don't. I think even one comment indicating bias can be sufficient. And particularly where that bias is in framing the legal standard, you know, that's the standard by which the case will be judged. So any, you know, improper standard there is significant, we think. All right. Thank you, counsel. Thank you to both counsel for your arguments. The case just argued is submitted for decision by the Court, and we are in recess until 9.30 a.m. tomorrow morning.
judges: Rawlinson, Callahan, Lasnik